The next case on for argument is Jock v. Sterling Jewelers. Good morning. May it please the court, before I turn to the three reasons why the district court's decision below should be reversed, I'd like to address briefly what I think the question is before this court at this time. There's a dispute between the parties, apparently, as to what the content was of the remand order issued before. I think it was very clear that the question presented was whether the arbitrator exceeded the scope of her authority by including absent class members within the certified class. It should be equally clear that the remand order did not preordain the outcome of that question or, as I believe the district court believed, permit it to reinstate or treat as law of the case the August 2010 decision, which we understand this court in Jock 1 set aside. That's my understanding. Ours too, Your Honor. Let me turn to the three reasons briefly why we think the arbitrator's decision should be upheld that certified a class that included absent class members. First, the arbitrator acted within her scope of authority in certifying a class of women who, pursuant to the resolve agreement, each expressly authorized the arbitrator to determine arbitrability and all procedural questions growing out of the underlying claim. Therefore, each class member authorized the arbitrator to decide whether her claim should be part of a certified class and also the form of any such class that may be certified. Thus, by executing the resolve agreement, each absent class member joined the same program in which she considered to be bound by the procedural rulings issued by the arbitrator. Second, even if the class members are not bound by the arbitrator's rulings, Sterling clearly is. There's no question that Sterling agreed to submit the question to the arbitrator whether claims should be certified and the form of those claims to be certified. Sterling also said that in the event that Title VII claims are certified, the certification should be governed by Rule 23 type procedures that are provided by the AAA supplementary rules on class arbitration. Could I? Yes. Why is it necessary for us to decide whether absent class members are in fact bound? If, in fact, you're correct that Sterling is bound, the issue of whether absent class members are bound is not going to come up, it's not ripe, until there is a decision on the class action in the arbitration. If Sterling loses, the chances that that will ever be contested by absent members of the class are close to nil. Judge Codall, I completely agree with you. The reason we're addressing the issue is because we understood the panel from the prior panel to have raised the question and we're trying to be responsive to it, but I . . . The prior panel only said that the issue hadn't been decided. Fair enough. Well, and perhaps it needn't be decided at this time. We do believe that Sterling is bound by the benefit of its bargain. Indeed, this case is much like the Oxford Health case decided by the Supreme Court where the parties agreed to entrust to the arbitrator the decision about arbitrability and who decides whether a class may be certified. And Justice Alito, to which Sterling refers frequently, expressed his concerns but recognized in concurring in the judgment that there was no reason to question the validity of the underlying class certified, it was a certified class, or of the question of the arbitrator's authority because the parties had entrusted that very decision to the arbitrator just as they did here. Are you aware of any case where a court has found that it was improper for an arbitrator to certify a B-2 class because there were absent class members? Well, I'm sorry. I didn't know you had finished the question. I'm sorry. Forgive me. That was it. Simple question. I'm not aware of any, Your Honor. Okay. As you know, there was a dispute below as to whether there's a right to opt-out that was accorded by the arbitrator and the district court found that that was inconsistent with the Supreme Court's decision, the Walmart decision. We ultimately didn't believe that because the only forms of relief currently at issue are declaratory and injunctive relief, that there was any reason that you needed to have an opt-out procedure. We do intend to return to the question of monetary relief. If there's an opportunity, if there's a liability to adjudicate the monetary relief on some representative basis, we will certainly renew our request to have an opt-out process. That will be before the arbitrator? That will be before the arbitrator, yes. We're premature on that issue as well? Absolutely. I just wanted the court to be mindful where we stand if we go down that path. While I don't think the issue is necessarily reached, we do address in our brief and can stand on that point if you wish, the question if the court feels compelled to address de novo, the question of whether the arbitrator properly construed the agreement. We think the arbitrator did. There's no question . . . Do you have the authority under the Act to address that issue? We don't believe you do. The only reason we raise it is because Sterling argued it, but we'll rest on our brief on that point. Unless you have further questions, I'd like to reserve the balance of my time for rebuttal. You've reserved three minutes. That's fine. That's ample. Thank you. Mr. Matman? Good morning. May it please the Court? My name is Gerald Matman of Cipher Shaw, and I represent Sterling in this litigation. We believe the issue before you today on appeal is a very narrow legal issue. It's whether by signing resolve, the non-parties to this arbitration nonetheless consented for an arbitrator unknown to them to decide issues that they did not submit to the arbitrator and as to be bound in some future case brought by someone else . . . By signing the agreement by which all the employees are bound to arbitrate, they haven't agreed to a particular arbitrator, yet they're going to get stuck with one, right? Well, as this panel and Judge Hall, you were on the panel in JOC 2, realized when you remanded that all these individuals signed the same arbitration agreement, but signing the resolve agreement was very different than the legal issue of consent because this issue, this case, pivots on the fact that the Federal Arbitration Act imposes certain rules of fundamental importance, the and this court in JOC 2 indicated that these non-parties, these absent class members did not consent . . . I don't entirely understand that to be our case law here or the law of the case. They signed a consent. Sterling asked them to consent to arbitrate all disputes arising out of their employment according to certain rules, which as it happens, include the possibility of class arbitration. The arbitrator found that class arbitration was suitable in this case. Why isn't that consent valid? Sterling looks for the benefit of it in other circumstances. The fact that it doesn't like the result in these circumstances doesn't mean that there was no consent. They were strangers to this arbitration proceeding and on page 3 of JOC 2, this court explicitly said in a sentence that they did not consent to participate in this proceeding. That's not how I read that sentence. They didn't select this arbitrator. They didn't opt into the case. They didn't select the arbitrator. They didn't appear before her. They didn't give testimony. They didn't authorize her to make a determination as to their rights as we read the Supreme Court's decisions with respect to the scope of an arbitrator's authority. It's based on consent to participate in that proceeding. No, but you're jumping ahead about three steps. When they sign up and sign off on agreeing to arbitrate, tell me why they aren't agreeing to everything that has happened so far. That is, the arbitrator decides the scope of the arbitration agreement. They don't have a choice in that. That matters before the arbitrator or Sterling would be screaming bloody hell, right? Of course, is the answer to that. So then, the problem is that, as one of my colleagues suggested, you're basically stuck with the agreement where you have authorized the arbitrator to make these decisions. The arbitrator has reached a conclusion and has set in motion a process that you've asked for, that you've insisted on. But then, JAC-2 is the law of the case and would make no sense for the remand to Judge Rakoff to determine the legal consequences of those individuals not consenting to participate in this arbitration. They did sign an agreement. JAC-2 indicates as much, but JAC-2 said they were absent, class members, non-parties to this proceeding, and the consequences of not being participants in this proceeding is they weren't a party to that determination in JAC-1. JAC-2 said JAC-1 was deciding a very different issue between the thirteen named plaintiffs and Sterling, and in JAC-2, this court, the panel indicated that JAC-2 was not decided by JAC-1 because those individuals didn't consent to participate in the proceeding and didn't consent to Arbitrator Roberts deciding the issue as to whether or not they would be bound.  So, there's a determination of whether people who were not parties to the arbitration could in fact be bound by the arbitration. You're seeking a ruling, and correct me if I'm wrong, that because there are people whom you say would not be bound by the ruling, the B-2 class action cannot proceed because there are these absent class members. Is that fair? The proceeding can continue as to the 254 at issue in JAC-1, but not as to the 70,000 or so at issue in JAC-2. Effectively, there can't be a B-2 class action. There can only be a class action involving the people who have consented to that arbitration. That's correct. In JAC-1, those people. My question is, why is it necessary to determine the effect of the B-2 class action on people whom you say have not opted in or consented to the arbitration? The arbitrator has said, this is the arbitration, a B-2 class action. This is the arbitration that should proceed. What difference does it make at this point to determine whether that's binding on people whom you say haven't consented, who are not parties to that arbitration? Your question illustrates the legal consequences of those class members not consenting to allow this arbitrator to decide the issue because, as Plans Counsel indicated in his oral argument, if they should win, they would then ask for money. What happens if they lose? Then it's heads I lose before the arbitrator, but tails I may win by bringing my own individual case. At that point, you could make the argument, if in fact it's a valid argument, that those people are not bound by the arbitration because they did not consent. And you could have that argument at that point. But to derail a B-2 arbitration, a B-2 class action in the arbitration on the grounds that it might not be binding on some other people, why isn't that premature? The argument- You agreed to have the arbitrator determine whether there can be a class action and whether there can be a B-2 class action. Only as to the parties before her that were at issue in JOC 1, not as to the people- What sense does that make? That isn't what JOC 1 said. It said it's up to the arbitrator to determine under the arbitration agreement whether, in the first instance, there can be class arbitration. We were very mindful of that, Stolt-Nielsen having just come down and told us, this court in particular, since that case emanated from here, you can't apply policy arguments to this, you have to look at the agreement. All right, we looked at the agreement. The agreement did not ban it. And so, we suggested that, as it went forward, the arbitrator decides what the arbitration agreement means with respect to it. But JOC 1 didn't invest the arbitrator with Article III powers to act like a federal judge. JOC 2 was careful to point out that JOC 1 dealt with the parties who consented to be before the arbitrator. And JOC 2 said these extra individuals never consented. And by buying into that argument, you're giving the arbitrator powers that are beyond the Federal Arbitration Act that are grounded in Article III, where these people never consented to be a participant. And JOC 2 would then have to be, in essence, overruled to allow that. So let me pose to you a way that I might look at this and ask you please to inform me why I am misguided. An employee or a prospective employee starting that day or the next day comes in and signs off on an agreement saying I agree to arbitrate any dispute that I have. That employee does, well, signs up for an agreement which we now know because an arbitrator has told us. Has signed up for an agreement that says, yes, and when you've signed that agreement, you have actually signed up for an agreement that authorizes the arbitrator to engage in a class arbitration. Which means that fellow employees can bring an action and seek to represent you and you and you who have just signed off on that at the employment entry office. And you are in substance, at least within procedures allowed by or allowed under class actions, within class actions. You are essentially authorizing fellow employers who have a dispute to act on your behalf, assuming the arbitrator goes through the proper hoops, decides what issues are before her. And also ultimately gives you notice to opt in or opt out if we're going to go down a certain path. Because Stolt-Nielsen said that is possible and parties might craft their agreement in that way, but resolve isn't. The issue before you is on page 117 in two sentences of the 120 page class determination order where the arbitrator didn't even analyze the issue as to whether those people. For instance, I signed it in 1998 and Larissa Jock brought a case nine years later and I didn't know about it. I didn't participate in it and I didn't consent to be bound by it and Jock to this court. But she did consent, or he, but the employee did consent to be bound by an arbitration agreement that ultimately was loosey-goosey enough that it needed to be interpreted by an arbitrator. And the employee signed off on an agreement, which Jock has argued for, that the arbitrator gets to decide what the agreement says. The agreement actually says if I go through steps one and step two, then I can go to step three in arbitration. That's not at issue here. And that employee never consented within the meaning of the Federal Arbitration Act. We would submit as interpreted by Stolt-Nielsen to that arbitrator making that determination. And then we get back to judge. Hodel's question. Yes, your honor. We submit that- All these questions premature. We submit that the order should be affirmed. That it would be stretching consent beyond the breaking point to reverse here and to allow this arbitrator to have, in essence, Article III powers that judges have. Thank you, your honors. Mr. Sellers, you've reserved a few minutes. Yeah, your honor, I can be brief. First of all, I think the court, I believe from the questions, understands our arguments. They all agreed to authorize an arbitrator to decide the class certification question as part of the procedures that the resolve agreement rule six of the employment rules, the AAA employment rules, and the supplementary rules provide. The arbitrator engaged in that very decision making, which Sterling agreed to authorize her to do as well as the claimants. And the only question that is really, I think, at issue here is, can this arbitrator bind those individuals? I defer to Judge Codal on the question of whether this may be premature to decide, but I feel compelled in case you consider it more fully, at least to at least make my argument and you'll decide how you want to proceed. It should be clear that if the court proceeds down that path, that they all agree to a common body of procedures, which included rule 23-like procedures in the AAA supplementary rules. Those rules contemplate having a single judicial officer type, an arbitrator, render a decision on class certification. And if the requirements, which are just like those of rule 23, are satisfied, to then decide liability that would bind all persons who fall within the scope of the agreement, of the class definition. The class is limited to only women who executed this same resolve agreement. That's why this is not simply a matter of including women who have not consented to be bound by this process. So we submit that if the court wishes to get to that point, it can conclude that the arbitrator acted properly in actually being able to bind these individuals. Certainly, we recognize if the issue were to be deferred to later, it's nonetheless grounds to uphold the arbitrator's decision allowing this class to be certified. Last point I want to make is on the question Mr. Matten referred to about people who entered agreements in 1998. The supplementary rules were issued in 2003. I want to be clear why that's not a problem. The class began, the certified class, earliest date is 2004. So everyone who remained at the company after 2003 must be presumed to have agreed to these supplementary rules which were issued in 2003. They could have left their employment if they found the rules offensive and gone somewhere else to work. Are you saying that this was drawn to everyone's attention in some way, or just that it happened and if they stayed, we should presume assent to the newly incorporated supplemental rules? The latter, Your Honor. There's no evidence that they called it to their attention, but we assume for purposes of our, this litigation, that people are aware of the triple A rules. They're aware of the, sorry. Yeah, no, I'm just thinking, and Sterling, of course, in control of the agreement and which had reserved the right to modify the agreement at any time, right? Then was, and running this dispute resolution program is fairly charged with knowledge. Yeah, certainly Sterling was charged with the knowledge, and that's another reason why Sterling can't now walk away or do a rerun of this as the Oxford Health Court cautioned against. But my point is, anyone who remained in the case, remained employed as of 2004 when the class began, would be deemed beyond notice that they could be bound by a class later certified by an arbitrator. Thank you. Thank you both. We'll reserve decision in this case.